# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:19-cv-00216

BOB DAVIS PAINT & DRYWALL INC., PLAINTIFF,

v.

THE VALSPAR CORPORATION AND THE SHERWIN WILLIAMS COMPANY, DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Pending before the court is the defendants' motion to dismiss. Dkt. 25. I have reviewed the motion, response (Dkt. 27), and reply (Dkt. 28), as well as the applicable law. For the reasons that follow, that motion is granted in part and denied in part.

### BACKGROUND

The plaintiff, Galveston residential painting company Bob Davis Paint & Drywall Inc., bought exterior paint from a local Valspar store beginning in May 2014. The Valspar store manager allegedly told Davis that the paint would be suitable for "beachfront houses that are exposed to salt air, high heat, and high humidity." Am. Compl. ¶ 9. The manager also allegedly said that the paint came with a lifetime warranty. *Id.* Davis bought the paint on several occasions:

- for Property One in May 2014;

1

- for Properties Two, Three, and Four in August 2014;
- for Property Five in December 2014;
- for Property Six in February 2015;
- for Property Seven in June 2016.[1]
- for Property Eight in July 2015;
- for Property Nine in August 2015;
- for Property Ten in September 2015;
- for Property Eleven in October 2015;
- for Property Twelve in November 2015; and
- for Properties Thirteen and Fourteen in May 2016.

*Id.* ¶¶ 11–24. The manager's promises about suitability for beachfront properties and the lifetime warranty were allegedly repeated at every sale. *Id.* ¶ 10.

In December 2014, the paint on Property Two "delaminated." *Id.* ¶ 25. Delamination is basically paint peeling. No Cheap Fix for Delaminating Paint, Dear Car Talk (Dec. 10, 2013), https://www.cartalk.com/content/no-cheap-fix-delaminating-paint. Davis assumed the problem was due to a defective batch of paint and returned to the Valspar store, where the manager gave him replacement paint for free. Am. Compl. ¶ 25. During the summer of 2015, Properties Four and Five also experienced paint delamination. *Id.* ¶ 26. Davis again reported the issue to Valspar, who gave him forty gallons of Perennial paint for free. *Id.* He used that paint to paint Properties Seven, Eight, and Nine, which later delaminated as well. *Id.* Between fall 2015 and May 2016, Davis continued to buy Perennial paint based on the manager's representations that the paint was suitable for beachfront homes—and because Valspar gave him a $15,000 credit for paint purchases. *Id.* ¶

---

[1] This is probably a typo, given that it falls out of order. Davis likely meant June 2015. This error does not matter for the statute-of-limitations argument addressed below.

27. Davis used that paint for five additional houses—Properties Ten through Fourteen—which later delaminated as well. *Id.* After May 2016, Davis finally stopped using Perennial paint. *Id.* ¶ 28.

Davis filed this case in the 56th District Court of Galveston County on May 30, 2019, asserting breach-of-contract and breach-of-warranty claims.[2] He seeks $244,000 damages for his out-of-pocket costs related to the repainting. He also seeks $100,000 in consequential damages.

After the case was removed, the defendants requested a pre-motion conference to discuss filing a motion to dismiss. Dkt. 12. Judge Hanks held a hearing, at which Davis agreed to amend his complaint to purportedly address the issues the defendants raised regarding the statute-of-limitations issues and a general lack of specificity. Davis filed an amended complaint—the live pleading—on August 12, 2019. Dkt. 18. The defendants filed a motion to dismiss on September 20, 2019. Dkt. 25. The docket-control order issued on September 25, 2019 set another amended pleading date of October 4. But Davis did not file a second amended complaint and instead filed a response to this motion to dismiss. Dkt. 27. This timeline is noteworthy because in his response, Davis asks for leave to replead to cure any defects. However, he has already been given ample

---

[2] The "contract" at issue is the sale of goods. Am. Compl. ¶¶ 32–34. The warranty claims are based on: (1) the express warranties that the Valspar store manager made to Davis at each sale regarding the paint being appropriate for beachfront properties and that the paint came with a lifetime warranty; (2) the implied warranty of merchantability, as Davis alleges the paint is not suitable for beachfront properties; and (3) the implied warranty of fitness for the particular purpose of painting beachfront houses. *Id.* ¶¶ 36–39.

opportunity to do so. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, a plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion-to-dismiss stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cty. Post No. 6119 Veterans of Foreign Wars*, No. C–08–270, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

## DISCUSSION

The defendants argue that the case should be dismissed for the following reasons: (1) many claims fall outside the applicable statute of limitations; (2) they

4

prominently disclaimed any warranties on contemporaneous sales invoices; (3) Davis cannot seek a breach-of-contract claim based on free goods; and (4) Davis fails to properly plead his implied-warranty-of-merchantability and implied-warranty-of-fitness claims.

The motion is granted in part and denied in part. The breach-of-contract and implied-warranty claims for Properties One through Six, as well as the express-warranty claim for Property Two, are time-barred and therefore dismissed. And the breach-of-contract claims for Properties Seven, Eight, and Nine are dismissed because Davis states that he received the paint for these properties for free. The remaining claims survive this stage.

### A. Statute of Limitations

The defendants argue that any of the claims arising from a sale on May 30, 2015, or earlier are barred by the four-year statute-of-limitations on breach-of-contract and breach-of-warranty claims. *See* TEX. BUS. & COM. CODE § 2.725.

As to the breach-of-contract claims, Davis responds that the discovery rule ought to apply and toll the accrual period until he discovered the delamination. Under this calculation, Davis agrees that one of the claims is barred (Property Two) because he discovered the delamination before May 30, 2015, but no others. As to the breach-of-warranty claims, Davis similarly contends that the future-performance exception in section 2.725(b) applies, such that his claims did not accrue until the breach was discovered.

5

The defendants are correct that the four-year limitations period prescribed in section 2.725 applies to an action for the breach of contract and the breach of warranty for the sale of goods. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545–46 (Tex.1986) (breach of warranty); *Big D Serv. Co. v. Climatrol Indus., Inc.*, 523 S.W.2d 236, 236 (Tex.1975) (breach of contract). So, unless Davis enjoys immunity from the limitations provision of section 2.725, his contract and warranty claims for Properties One through Six are time-barred. *See Tarrant Cty. Hosp. Dist. v. GE Auto. Servs., Inc.*, 156 S.W.3d 885, 893 (Tex. App.—Fort Worth 2005, no pet.).

1. **Breach of Contract**

Texas has "specifically rejected the discovery rule in [certain situations], including contract cases involving the sale of goods." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (citing TEX. BUS. & COM. CODE § 2.725(b)). Availability of the discovery rule is limited to cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015) (citations omitted). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001).

Davis states that the delamination defect was "inherently undiscoverable" and tolling should apply. That argument fails. Davis does not attempt to explain how the paint meets this standard or how the alleged defects could not be

discovered through due diligence. Indeed, Davis *did* discover the delamination well within the four-year time frame for all properties (except Property Two). Am. Compl. ¶¶ 11–24. The discovery rule does not apply.[3]

"It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). Davis alleges that the defendants breached their "contract of sale" by providing the allegedly defective paint beginning in May 2014. Am. Compl. ¶ 8. Consequently, any breach-of-contract related to that allegation expired in May 2018—one year before Davis sued. Claims related to sales of allegedly defective paint in August 2014 (*id.* ¶¶ 12–14), December 2014 (*id.* ¶ 15), and February 2015 (*id.* ¶16) are similarly time-barred.

In total, Davis's breach-of-contract claims related to Properties One, Two, Three, Four, Five, and Six are time-barred. These claims are dismissed.

## 2. Breach of Warranty

The statute of limitations on a breach-of-warranty claim begins to run when the item in question is delivered, unless "a warranty explicitly extends to future performance of the goods." TEX. BUS. & COM. CODE § 2.725(b). That means that all breach-of-warranty claims related to paint purchased before May 30, 2015—

---

[3] The defendants raise the issue of whether the discovery rule is properly before the court, given that Davis did not plead it in his amended complaint. But because the defendants address the merits of the argument in their reply brief, it is appropriate for the court's consideration. *See Via Net*, 211 S.W.3d at 313 (finding that the discovery rule was properly before the trial court when the defendant responded to the merits of the argument after the plaintiff asserted the defense for the first time in its summary-judgment response).

7

including paint for Properties One through Six—are untimely, unless the future-performance exception applies. If the future-performance exception applies, "the warranty cause of action does not accrue until discovery of the breach." *Safeway Stores*, 710 S.W.2d at 546.

Davis contends that the defendants' statements—that the product was suitable for painting beachfront houses and came with "a lifetime warranty"—triggered the future-performance exception. Resp. 6; *see* Am. Compl. ¶ 9. Texas law is clear that the future-performance exception does not apply to implied-warranty claims. *Id.* at 547–48. But the future-performance exception can toll the accrual of an express-warranty claim. Courts "construe the [future-performance] exception narrowly, with the emphasis on the term 'explicitly.'" *Safeway Stores*, 710 S.W.2d at 548 (citations omitted). "For an express warranty to meet the exception, it must make specific reference to a specific date in the future." *Id.*

The defendants argue that "a lifetime" is not a specific date in the future. They cite two cases in their favor: *Belmonte v. Baxter Healthcare Corp.*, 2002 WL 560996 (Tex. App.—Dallas Apr. 16, 2002, no pet.), and *Roy v. Armco, Union Wire Rope Div.*, 636 F. Supp. 839 (E.D. Tex. 1986), *aff'd*, 818 F.2d 863 (5th Cir. 1987). *Belmonte* is most persuasive. In that case, the warranty at issue was that the plaintiff's implants "should last a lifetime." *Belmonte*, 2002 WL 560996, at *3. The court found that the future-performance exception did not apply because it did not "make specific reference to a specific date in the future." *Id.* at *4 (citing *Safeway*, 710 S.W.2d at 548). But the court also considered that the language included the

8

word "should": "the alleged warranty was the implants 'should' last a lifetime, not a guarantee the implants would conform to a particular standard for the duration of [the plaintiff's] life." *Id.*

Here, there is no such qualification on the alleged lifetime warranty. Davis contends that the defendants offered a "lifetime warranty" on the paint. That is enough to trigger the future-performance exception. Indeed, other jurisdictions that have considered this question agree. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 880 (8th Cir. 2000) (holding that a "warranty for the 'lifetime' of a product . . . is enforceable as a future performance warranty"); *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 360 (S.D.N.Y. 2014) (citing *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1154 (N.D. Ind. 1983) (holding that an express lifetime warranty extends to future performances)).

Finally, the defendants argue in their reply that because Davis did not raise this exception in his amended complaint, he cannot invoke it now. But the discovery rule may be pleaded "through sufficient facts to put the defense on notice of the theories on which the complaint is based." *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 510 (5th Cir. 2012). Given that the amended complaint specifically makes note of "the lifetime warranty," Davis pleaded the key fact that would put the defendants on notice of his intent to rely on this exception. Plus, the defendants do not simply argue that Davis improperly raised the discovery rule; they engage in a discussion of the merits of the exception. So the issue is properly before the court. *See supra* note 3.

The breach-of-implied-warranty claims related to Properties One, Two, Three, Four, Five, and Six are time-barred. These claims are dismissed. However, the alleged "lifetime warranty" invokes the future-performance exception on the breach-of-express-warranty claims. All express-warranty claims, with the exception of Property Two, survive this stage.[4]

## B. Whether the Defendants Disclaimed Warranties on Sale Invoices

The defendants next argue that Davis's breach-of-express-warranty and breach-of-implied-warranty-of-fitness claims fail because each invoice from a paint sale included a disclaimer of warranties. The defendants attach several (though not all) of the invoices from these sales as examples to their motion. Mot. to Dismiss Ex. A.

As an initial matter, Davis argues that consideration of the invoices at this stage is inappropriate, since he did not attach them (or anything, for that matter) to his amended complaint. "In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 60 F. Supp. 2d 614 (S.D. Tex. 1999)). However, there is one limited exception to this rule: A court may consider documents attached to a motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to the [plaintiff's] claims." *Collins*, 224 F.3d at 498–99.

---

[4] Davis appears to agree that his claims for Property Two are time-barred. *See* Resp. 6 ("[O]ne instance in this saga shows a purchase of paint before May 30, 2015, and resulting failure prior to May 30, 2015; that is the initial incidents at the 19211 Shores Dr. home. [DE 18, ¶12].").

The defendants argue that the "sample" of invoices are appropriate for the court's consideration at this stage because Davis's claims pertain exclusively to sales of paint that these invoices document. Reply 10. But Davis objects to the court's consideration of the invoices at this stage, claiming that they are "incomplete and partial documents" and are not central to his claims. Resp. 9. In fact, the amended complaint makes no mention of sales invoices; rather, Davis focuses on the contemporaneous promises and assurances made to him at each sale. The fact that Davis did not refer to invoices in his complaint cuts against their consideration. *See Westcott Holdings Inc. v. Monitor Liab. Mgrs., Inc.*, Civ. No. H–05–1945, 2005 WL 2206196, at *5 (S.D. Tex. Sept. 12, 2005) (declining to consider a document attached to a 12(b)(6) motion when the plaintiff did not rely on or refer to it in the complaint). Plus, the bare fact that Davis objects to the invoices' consideration cuts against the defendants. *See Scanlan*, 343 F.3d at 536 (noting that in *Collins*, the fact that the plaintiffs not did object to the trial court's consideration of the documents was central to the Fifth Circuit's approval of the practice).

The sampling of invoices does not sufficiently satisfy the *Collins* considerations, and I decline to consider them at this stage.

### C. Breach-of-Contract Claims for Free Paint?

The defendants contend that Davis should not be able to assert breach-of-contract claims for the houses that he painted with the free paint that the Valspar store manager gave him. *See* Am. Compl. ¶ 26 (noting that Davis used this free

11

paint on Properties Seven, Eight, and Nine). They argue that "absent mutual or binding terms, there could not have been any contract (or breach) to begin with," citing *Lucchese Boot Co. v. Lincon*, 473 S.W.3d 390, 400 (Tex. App.—El Paso 2015, no pet.). They further point out that in Davis's amended complaint, he asserts his breach-of-contract claims on the basis that he "complied with the contract of sale by paying for the product." Am. Compl. ¶ 32. Because Davis alleges that he did not pay for the paint that he used to paint Properties Seven, Eight, and Nine, *see id.* ¶ 26, and his breach-of-contract claims are based on paint that he "pa[id] for," *id.* ¶ 32, he fails to allege consideration for these claims. So, he fails to state a claim for these properties. The breach-of-contract claims for Properties Seven, Eight, and Nine are dismissed.

The defendants make a similar argument concerning the $15,000 credit that Davis received against paint purchases for Properties Ten, Eleven, Twelve, Thirteen, and Fourteen. *See* Am Compl. ¶ 27. Without more information, it is impossible to assess the strength of that argument. Davis points out that this is an attack on his "damage[s] model," which is not appropriate at this stage. Resp. 13. That makes sense. The breach-of-contract claims for Properties Ten through Fourteen survive.

### D. Whether Davis Adequately Pleaded his Claims

The defendants contend that all of Davis's implied-warranty claims should be dismissed for pleading defects. Mot. to Dismiss 10–12; 13–15. First, they argue that Davis failed to properly plead a breach-of-implied-warranty-of-

merchantability claim because he did not allege that the paint has a defect. Second, the defendants argue that Davis's implied-warranty-of-fitness claims should be dismissed because he used the paint for its intended purpose, not an unusual one.

1. **Implied Warranty of Merchantability**

The defendants maintain that all implied-warranty-of-merchantability claims should be dismissed because Davis did not plead that the paint had a defect that rendered it unfit for its ordinary purpose. *Id.* at 10–12. A "defect" in this context "means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). The plaintiff "has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession." *Id.* The plaintiff does not "have to use direct or expert opinion evidence to show that the goods had a defect; he can instead meet his burden by using circumstantial evidence," so long as he can present evidence that he "handled and applied" the goods properly. *Id.*

In the amended complaint, Davis alleges several facts that amount to plausible defects:

- For each property, Davis alleges that the paint "delaminated." Am. Compl. ¶¶ 11–24.

- Under the breach-of-warranty section, Davis alleges that paint "delaminated and failed to maintain its adherence to the houses." *Id.* ¶ 36.

- Davis further alleges that the paint "is not fit for the purposes for which it was intended, namely long-lasting exterior paint for houses." *Id.* ¶ 37.

13

Though the defendants contend that Davis has not provided support for the facts he has alleged, he has met the Rule 8(a)(2) standard, which is all that is required of him at this point. *See Twombly*, 550 U.S. at 570 (requiring a claim to have facial plausibility). And he has pleaded facts that at least invoke a plausible defect: Paint is not supposed to peel off houses.

Indeed, the case the defendants cite in favor of dismissal provides a helpful contrasting example: *Sanchez v. QuikTrip Corp.*, No. 3:18-cv-1337, 2019 WL 1380310 (N.D. Tex. 2019). In *Sanchez*, the plaintiff alleged that "a dough-cutting machine that impales the finger of a person when that person cleans the machine renders it unfit for its purpose, *even if the machine in fact cuts dough.*" *Id.* at *2 (emphasis added). For the purposes of an implied-warranty-of-merchantability claim, the court found the plaintiff failed to state a claim because she did not allege that the product had "a defect or condition [that] rendered the dough-cutting machine unfit for its ordinary purpose." *Id.* Dough cutters are supposed to cut; paint is not supposed to peel.

Davis has met his pleading burden. The implied-warranty-of-merchantability claims (as to Properties Seven through Fourteen) survive the motion to dismiss.

## 2. Implied Warranty of Fitness for a Particular Purpose

Finally, the defendants argue that the implied-warranty-of-fitness claims should be dismissed because Davis used the paint for its "ordinary, intended purpose: to paint the exterior of houses in and around Galveston." Mot. to Dismiss

14. "Under Texas law, an implied warranty of fitness for a particular purpose arises when 1) the seller has reason to know of a particular purpose for which the goods are required, and 2) the buyer is relying on the seller's skill or judgement to select goods suitable for that particular purpose." *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999) (citing TEX. BUS. & COM. CODE § 2.315). But the "particular purpose" must differ "from the usual and ordinary use of the goods." *Id.*

Davis does allege that the paint at issue is an "exterior house paint product." Am. Compl. ¶ 37. But throughout his amended complaint, he makes clear that he used this paint on "beachfront houses that are exposed to salt air, high heat, and high humidity." *See id.* ¶ 9. Davis alleges that he relied on the Valspar store manager's advice that the paint would be suitable for these distinctive homes that are exposed to a harsh environment. *Id.* Just because Davis was using the paint as it ought to be used—applying it to the exterior of homes—does not mean that his particular purpose was not unique. The paint was still used as paint, but not on ordinary homes.

The cases that the defendants cite in their favor are all distinguishable, namely because the product at issue in each case was a clear-cut example of a "usual and ordinary use" of that product. *See Coghlan*, 73 F. Supp. 2d at 774–75 (no implied warranty because resistance to deterioration is a characteristic generally desired by purchasers of fishing boats); *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 158–59 (Tex. App.—Texarkana 1997, writ denied) (no implied

warranty because the airbags were purchased for the same use as they were designed); *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 586–87 (Tex. App.—Texarkana 1996), *rev'd on other grounds*, 967 S.W.2d 377 (Tex. 1998) (no implied warranty because carrying and protecting passengers is a standard use of a vehicle); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex. App.—Corpus Christi 1994, no writ) (no implied warranty because raising a commercial cash crop is the ordinary purpose of the seed).

The remaining implied-warranty-of-fitness claims (for Properties Seven through Fourteen) survive the motion to dismiss.

\* \* \*

For clarity, the following claims are dismissed:

- The breach-of-contract and all implied-warranty claims for Properties One, Two, Three, Four, Five, and Six (time-barred);

- The express-warranty claim for Property Two (time-barred); and

- The breach-of-contract claims for Properties Seven, Eight, and Nine (lack of consideration).[5]

The following claims survive:

- The breach-of-contract claims for Properties Ten, Eleven, Twelve, Thirteen, and Fourteen;

- All express-warranty claims, except for Property Two;

---

[5] Davis asks that he be given the opportunity to replead, should this court dismiss any of his claims through this motion. Resp. 14. Davis has already had an opportunity to replead after a pre-motion conference Judge Hanks held before the defendants filed their motion. Dkt. 17. He also was given an additional repleading deadline in the docket-control order. Dkt. 26. He has had ample time to amend his pleadings. In any event, repleading could not correct the specific deficiencies with these claims.

- The implied-warranty-of-merchantability claims for Properties Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen; and

- The implied-warranty-of-fitness claims for Properties Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen.

The scheduling order entered on September 25, 2019 (Dkt. 26), as amended on March 20, 2020 (Dkt. 34), remains in place.

SIGNED on Galveston Island this 7th day of April, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE